**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**SINOMAX USA, INC.,**

      **Plaintiff,**

                                   **Civil Action 2:21-cv-3925**

      **v.**                            **Chief Judge Algenon L. Marbley**

                                   **Magistrate Judge Kimberly A. Jolson**

**AMERICAN SIGNATURE INC,**

      **Defendant.**

## OPINION AND ORDER

This matter is before the Court on Plaintiff's Motion for Leave to Serve a Reply Expert Report and for Extension of the Remaining Case Management Deadlines (Doc. 58). For the following reasons, the Motion is **GRANTED in part**. Plaintiff shall have until October 31, 2022 to serve its rebuttal expert report. The remaining case deadlines are **AMENDED** as follows: discovery due November 14, 2022; dispositive motions due December 15, 2022.

## I.      BACKGROUND

Plaintiff's complaint alleges, in part, trademark infringement under the Lanham Act, 15 U.S.C. §§ 1114, 1125(a), (c). (Doc. 25, ¶¶ 29–57). Plaintiff owns the DREAM STUDIO mark and uses it on a variety of goods including mattresses, pillows, and mattress toppers. (Doc. 25, ¶ 9). Defendant registered and uses a mark that Plaintiff says is "similar." (*Id.*, ¶¶ 20, 25). Defendant uses its mark, DREAM MATTRESS STUDIO, to designate a portion of its stores and website where box springs, mattresses, and associated merchandise is sold. (Doc. 35 at 3). It also uses the mark to advertise. (*Id.*). Plaintiff says that Defendant's use of the DREAM MATTRESS STUDIO mark is likely to cause confusion among the public with Plaintiff's DREAM STUDIO mark. (Doc. 25, ¶¶ 25, 35, 40, 47).

Now, as discovery is about to close, the parties bring a dispute regarding expert witnesses before the Court.  (Docs. 58, 59).  The Court's scheduling order required that the parties submit their primary expert reports by June 1, 2022, and their rebuttal expert reports by August 1, 2022.  (Doc. 21 at 7).  Plaintiff served its expert report, prepared by Hal Poret, on the June 1, 2022 deadline for primary expert reports.  (Doc. 58-1, ¶ 3; Doc. 58-2).  Defendant served its expert report, prepared by David T. Neal, Ph.D., on the August 1, 2022 deadline for rebuttal expert reports.  (Doc. 58-1, ¶ 4; Doc. 58-3).

Each expert employed a different method for determining the likelihood of confusion between Plaintiff's DREAM STUDIO mark and Defendant's DREAM MATTRESS STUDIO mark.  Mr. Poret conducted a survey of 400 respondents using a Sequential Lineup format, "which replicates a common marketplace scenario in which consumers are exposed to both parties' products/advertising in the marketplace."  (Doc. 58-2 at 12).  Dr. Neal conducted two of his own surveys, of 1,006 "U.S. purchasers and likely purchasers of mattresses[,]"  (Doc. 58-3 at ¶ 3.1) using the Eveready format, "which does not require proximity of the marks at issue and thus [in his opinion] properly replicates the marketplace in this matter" (*id.* at ¶ 1.9.3).

Plaintiff believes Dr. Neal exceeded the scope of rebuttal, presenting a "significantly different" method for determining the likelihood of confusion and drawing "exclusively on materials exchanged in discovery before Plaintiff served the Poret report."  (Doc. 58 at 4).  Yet, because Dr. Neal's report was served on the deadline for serving rebuttal expert reports, Plaintiff was left without recourse to have its own expert respond to Dr. Neal.  Plaintiff asked for Defendant's consent to its request for the Court to allow additional time to serve a rebuttal report (Doc. 58-4 at 2) but was unable to secure it (Doc. 58-5 at 2).  Accordingly, Plaintiff brought the dispute before the Court, and a schedule was set for briefing.  (Doc. 57).  Plaintiff filed the present

Motion (Doc. 58), and Defendant filed a response in opposition (Doc. 59). The matter is now ripe for consideration.

## II.    STANDARD

At issue here is the proper scope of rebuttal expert testimony. Federal Rule of Civil Procedure 26(a)(2)(A) requires that any expert witness who may present evidence at trial be disclosed to other parties. Fed. R. Civ. P. 26(a)(2)(A). To eliminate surprise and prevent strategic withholding of experts, Rule 26 sets forth presumptive timing for disclosures. Fed. R. Civ. P. 26(a)(2)(D)(i)–(ii); *see McHugh v. Olympia Entm't, Inc.*, 37 F. App'x 730, 735 (6th Cir. 2002) (noting Rule 26 serves a dual purpose of "narrowing the issues and eliminating surprise"). Particularly, in the absence of a court order, Rule 26 requires that experts generally be disclosed ninety days prior to trial. Fed. R. Civ. P. 26(a)(2)(D)(i). Yet, when evidence "is intended solely to contradict or rebut evidence on the same subject matter identified by another party[,]" it may be offered within thirty days of the opposing expert's initial disclosure. Fed. R. Civ. P. 26(a)(2)(D)(ii).

The timeline contemplated by the Rule underscores that each party must disclose its own arguments at the outset. The purpose of rebuttal reports is not to "advance new arguments or new evidence outside the scope of the opposing expert's testimony." *Ohio A. Philip Randolph Inst. v. Smith*, No. 1:18cv357, 2019 WL 428371, at *2 (S.D. Ohio Feb. 4, 2019) (quoting *Bentley v. Highlands Hosp. Corp.*, No. 15-cv-97, 2016 WL 5867496 at *5 (E.D. Ky. Oct. 6, 2016)). But "[a] rebuttal expert may cite new evidence and data so long as the new evidence and data is offered to directly contradict or rebut the opposing party's expert." *Id.* (citation omitted). Courts must look carefully at the substance of the rebuttal report to determine its purpose. Otherwise, "crucial opinions" might be held back from initial disclosures and presented as rebuttal to enable a party "to drop them on their opponent at the last minute[.]" *Bentley*, 2016 WL 5867496, at *4.

Rule 16, for its part, allows for the modification of a scheduling order for good cause.  Fed. R. Civ. P. 16(b)(4).

## III.    DISCUSSION

Plaintiff asks the Court for forty-five days to serve an expert report rebutting the surveys in the report of Dr. Neal, and to extend the remaining case deadlines accordingly.  (Doc. 58 at 1). It says this is necessary because, though Dr. Neal's report was nominally a rebuttal report, the inclusion of two new Eveready surveys took it beyond mere contradiction of Mr. Poret's findings. (*Id.* at 4).  Further, because those surveys were conducted with materials exchanged prior to the initial expert report deadline, Plaintiff says nothing necessitated the disclosure of the surveys in rebuttal and this was instead a tactical choice intended to deprive Plaintiff of its opportunity to rebut the surveys.  (*Id.* at 5–6).

Defendant maintains that Dr. Neal simply identified errors in Mr. Poret's report, putting his report squarely in the realm of rebuttal.  (*See generally* Doc. 59).  Dr. Neal should not be precluded, Defendant says, from offering his own surveys in rebuttal.  (*Id.* at 2).  Yet, given the particularities of Dr. Neal's surveys, the Court finds that Defendant has exceeded the scope of merely contradicting Plaintiff's expert, and Plaintiff must be afforded the opportunity to have its own expert respond.  Specifically, (1) Dr. Neal's surveys utilized an entirely different methodology than Mr. Poret's; (2) Dr. Neal proffered his own opinion about the likelihood of purchase confusion based on those studies; and (3) that opinion, which was based on material available prior to the initial expert report deadline and which addressed the central issue in this litigation, should not have been withheld until rebuttal.

It is true that portions of Dr. Neal's report are mere rebuttal.  Section Two of his report only identifies what he believes are "fundamental problems" with Mr. Poret's choice to use a Sequential Lineup survey.  (Doc. 58, ¶ 2).  Particularly, Dr. Neal suggests that Mr. Poret's survey

was not appropriate because the marks do not appear in "proximity" in the marketplace and the survey addressed "initial interest confusion" and not "purchase confusion." (*Id.*, ¶¶ 2.2, 2.3). This portion of the report solely contradicts Mr. Poret's report and undermines his conclusion.

Yet, Dr. Neal went further. He designed two surveys using the Eveready method, which he believes correct the perceived errors in Mr. Poret's report. (*Id.*, ¶ 3.1). That is, the Eveready surveys are not premised on the marks being proximate in the marketplace, and Dr. Neal employed them to gauge purchase confusion, not initial interest confusion. (*Id.*, ¶ 1.9.3). Here Dr. Neal exceeded the scope of rebuttal, differently conceiving and taking measure of marketplace confusion. (*Id.*) ("[I]nstead of measuring initial interest confusion as Mr. Poret apparently sought to do, I examined actual purchase confusion."). Indeed, Dr. Neal offered an independent conclusion:

> Based on my academic and professional experience and the results of my two surveys, I conclude that there is no likelihood of confusion with Plaintiff caused by Defendant's use of the mark DREAM MATTRESS STUDIO in connection with mattresses and related bedding products.

(*Id.*, ¶ 3.3).

Notably, everything upon which Dr. Neal based his opinion—his own experience, his own study design, and the materials exchanged by the parties in this litigation—were available to him before the initial expert report deadline. And the dispute regarding consumer confusion, which is the central issue of this case, was known to Defendant and its expert prior to the initial expert deadline. In fact, Defendant has stated as an affirmative defense that:

> [Defendant]'s use of DREAM MATTRESS STUDIO will not mistakenly be thought by the public to derive from the same source as Plaintiff's goods, nor will such use be thought by the public to be a use by Plaintiff or with Plaintiff's authorization or approval.

(Doc. 26, ¶ 72).

5

When a party knew or should have known of the need to adduce expert testimony on an issue, it is less reasonable to accept that it was offered merely in rebuttal. *Bentley*, 2016 WL 5867496, at *9 (noting an instance in which a court "exclude[d] rebuttal that, instead of 'solely contradict[ing] or rebut[ting]' another expert, attempted to add an untimely opinion that the party should have known all along it would need.") (citing *People v. Kinder Morgan Energy Partners, L.P.*, 159 F. Supp. 3d. 1182, 1191–93 (S.D. Cal. 2016)). While Plaintiff ultimately bears the burden of proof on the issue of consumer confusion, Defendant has made the lack of consumer confusion a central element of its defense and should have known it would rely on its own studies to demonstrate a lack of confusion. Were the Court to find otherwise, it would allow parties to withhold expert testimony on which they know they will rely and wait, tactically, to drop it into the lap of their opposing parties at rebuttal. This is precisely the type of surprise Rule 26 aims to eliminate.

The question is not, as Defendant frames it, whether a rebuttal expert altogether is "precluded from offering its own consumer survey in a rebuttal report." (Doc. 59 at 2). But where, as here, a survey employs a distinct methodology, takes a different measure, concludes with its own opinion, and demonstrates no need to be withheld until rebuttal, it exceeds the scope of rebuttal. At base, Defendant has created an imbalance in which its expert has both generated his own supporting expert studies and scrutinized Plaintiff's study, while shielding Defendant's studies from the same scrutiny by Plaintiff's expert. This imbalance should be corrected, and therefore Plaintiff's Motion is **GRANTED in part**. The Court will provide thirty days for Plaintiff to file its rebuttal report and extend the remaining case deadlines by forty-five days.

Plaintiff is cautioned to observe what the Court has noted here in preparing its own rebuttal report.  The door on expert discovery needs to close, and the parties must proceed efficiently through the remaining case deadlines.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Leave to Serve a Reply Expert Report and for Extension of the Remaining Case Management Deadlines (Doc. 58) is **GRANTED in part**. Plaintiff shall have until October 31, 2022 to serve its rebuttal expert report.  The remaining case deadlines are **AMENDED** as follows: discovery due November 14, 2022; dispositive motions due December 15, 2022.

IT IS SO ORDERED.


Date: September 30, 2022                          /s/ Kimberly A. Jolson
                                                 KIMBERLY A. JOLSON
                                                 UNITED STATES MAGISTRATE JUDGE